**UNITED STATES of America, Appellee,**

v.

**Carmen GOMEZ, Defendant,**

**Natanael Cuevas, Defendant–Appellant.**

**No. 476, Docket 93–1266.**

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1993.

Decided Nov. 19, 1993.

Filed Aug. 1, 1994.

---

Leonard J. Levenson, II, New York City, for defendant-appellant.

Andrew S. Dember, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D. of N.Y., John W. Auchincloss II, Asst. U.S. Atty., of counsel), for appellee.

Before: LUMBARD, PIERCE and MINER, Circuit Judges.

PER CURIAM: *

## I.

Defendant-appellant Natanael Cuevas appeals from a judgment entered on April 1, 1993 in the United States District Court for the Southern District of New York (Stanton, J.), after a plea of guilty, convicting him of conspiracy to commit fraud, in violation of 18 U.S.C. § 371, sentencing him to a six-month term of imprisonment, to be followed by a two-year term of supervised release, and imposing a $50 special assessment. The district court refused to make a two-level downward adjustment for minor participation, *see* U.S.S.G. § 3B1.2, and used a $32,000 loss figure to compute Cuevas' offense level, *see id.* § 2F1.1. For the reasons that follow, we affirm.

---

\* Because we believe that publication is warranted, we issue this opinion restating the summary order, entered on November 19, 1993, disposing of the appeal in this case.

## II.

In June of 1991, the Government commenced a large-scale investigation into the drug diversion business. Cuevas was a "first-level diverter" who purchased legally issued prescription drugs from Medicaid recipients. First-level diverters, such as Cuevas, then would repackage the drugs in plastic bags and other containers without lot numbers or expiration dates. The drugs then were sold to "high-level diverters" who in turn sold their inventories to other high-level diverters or directly to pharmacists throughout the metropolitan New York area. The pharmacists then would dispense the drugs at retail prices to unsuspecting consumers.

In June of 1992, the Government swore out a complaint for the purpose of securing arrest warrants for seventy-five individuals for various offenses arising out of its drug diversion investigation. An affidavit submitted by FBI Special Agent Jaclyn Zappacosta in support of the complaint supplied information regarding approximately thirteen first-level diverters, including Cuevas and co-defendant Carmen Gomez. The Government also provided information regarding approximately sixteen high-level diverters. The affidavit detailed various sales of diverted prescription drug sales made by Cuevas and Gomez to a confidential informant ("CI") and an undercover agent.

On June 30, 1992, Cuevas and Gomez were arrested. The Government executed a search warrant at their apartment and recovered ninety-three boxes of prescription drugs, various drugs in plastic bags, loose pills, fifty-four empty Retrovir bottles, a prescription pricing guide and various other items. A seventeen-count indictment was filed against Cuevas and Gomez on July 14, 1992. On January 15, 1992, Cuevas pleaded guilty to Count One of the Indictment, which charged him with conspiring to violate various provisions of the Federal Food, Drug, and Cosmetic Act pertaining to the adulteration and misbranding of prescription drugs, in violation of 18 U.S.C. § 371.

In its presentence report ("PSR"), the Probation Department fixed Cuevas' base offense level at six. It then added five levels to reflect the $52,229 loss previously stipulated by the parties and an additional two levels because the offense involved more than minimal planning. With a two-level downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1(a), the adjusted offense level of eleven called for a sentencing range, in Cuevas' criminal history category (I), of eight to fourteen months. Cuevas objected to various aspects of the PSR by letter dated March 11, 1993. He argued, inter alia, that the amount of loss, if any, under section 2F1.1 was "in the range of $2,000 to $5,000" and that he no longer wished to be bound by the $52,229 figure he agreed to in the plea agreement. Cuevas also argued that he was entitled to a two-level reduction for his minor role in the offense.

At the sentencing hearing, the district court recalculated the amount of loss and came up with a figure of $32,000. The district court arrived at the figure by subtracting the value of the prescription drugs recovered and purchased by the Government, reflected in the amount the Government actually paid for the drugs, from their retail value. The district court also rejected Cuevas' contention that he was entitled to a downward adjustment for his minor role in the overall conspiracy, finding that the role in the offense should be determined within the context of the charge to which Cuevas pleaded guilty and the defendants' behavior "with respect to their own particular transactions and the drugs in their own particular apartment." The district court thereafter recalculated Cuevas' offense level to be ten and sentenced him to a term of imprisonment of six months, to be followed by a two-year term of supervised release and a $50 special assessment.

## III.

Cuevas first contends that the district court erred in failing to make a two-level downward adjustment to reflect his minor role in the offense. We disagree. Section 3B1.2 of the Guidelines authorizes a two-level decrease in a defendant's offense level if he was a minor participant in the criminal activity, but a defendant must prove by a

preponderance of the evidence that he is entitled to this adjustment. *See, e.g., United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir. 1992). The district court's finding as to the defendant's role in the offense is subject to review only for clear error, *see United States v. Garcia,* 920 F.2d 153, 156 (2d Cir.1990) (per curiam), and due deference is given to its application of the Guidelines to the facts, *see United States v. Davis,* 967 F.2d 84, 88–89 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 356, 121 L.Ed.2d 270 (1992).

The district court properly evaluated Cuevas' role in the offense solely by reference to the actions of Cuevas and Gomez. The Guidelines provide that "[i]f a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense." U.S.S.G. § 3B1.2, Application Note 4. Cuevas' base offense level was predicated on the amount of drugs involved in the sales to the CI and undercover agent by Cuevas and Gomez, and the amount recovered from their apartment, instead of the total amount involved in the entire drug diversion scheme. Cuevas' argument would allow him to secure a downward adjustment based on his relative role in the entire drug diversion scheme, while his base level is calculated on his narrower conduct in the charged offense. We are not prepared to follow this path. *See United States v. Olibrices,* 979 F.2d 1557, 1560 (D.C.Cir.1992) (reduction for minor role in offense cannot be awarded when larger offense was not taken into account in setting base level) (citing section 3B1.2, Application Note 4); *United States v. Lillard,* 929 F.2d 500, 502–03 (9th Cir.1991) (commentary to section 3B1 does not allow consideration of larger narcotics conspiracy in determination of mitigating roles as to separate distribution charge). Since the record is clear that Cuevas is not entitled to a downward adjustment based on his activity with Gomez, we find no basis to disturb the district court's findings.

■ Cuevas also contends that the district court erred in computing his offense level under section 2F1.1. Section 2F1.1 provides a schedule to adjust a defendant's offense level in relation to the amount of the loss resulting from the defendant's fraud. Under the Guidelines, "loss" may consist of probable loss resulting from the fraud. *United States v. Brach,* 942 F.2d 141, 143 (2d Cir.1991). Where the fraud involves a misrepresentation regarding an item that has some value, the loss is the difference between the amount paid by the victim for the item and the amount for which the victim could resell it. U.S.S.G. § 2F1.1, Application Note 7(a).

■ Cuevas argues that there was no loss to the ultimate purchasers because there is no showing that they did not receive valuable and effective drugs. In determining the amount of loss, however, the sentencing court need only make a reasonable estimate of the range of loss, given the available information, U.S.S.G. § 2F1.1, Application Note 8, which we review only for clear error, *see United States v. Haddon,* 927 F.2d 942, 952 (7th Cir.1991); *United States v. Davis,* 922 F.2d 1385, 1388 (9th Cir.1991).

Here, the district court reasonably arrived at the figure of $32,000. At the sentencing hearing, it determined that the ultimate consumer would pay less for prescription drugs packaged without expiration dates and lot numbers that had been through the process to which Cuevas subjected them than for drugs obtained directly from the manufacturer in the usual course of business. In concluding that $32,000 accurately reflected the amount of loss, the district court deducted the street value of the drugs, as purchased and recovered from Cuevas and Gomez, from the retail value of $52,229. The court reasoned that the price paid by the CI and undercover agent represented the value of the drugs. We conclude that the district court's valuation constituted a reasonable estimate of the loss and find no basis to overrule its finding.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.