**UNITED STATES of America**

v.

**Gary Scott WARD.**

**Crim. No. 95–0216–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 1, 1995.

Christopher Finch, Alexandria, VA, for Ward.

### SENTENCING MEMORANDUM

ELLIS, District Judge.

#### Introduction

Defendant Gary Scott Ward is before the Court for sentencing after entering a plea of guilty on July 5, 1995 to Count 1 of an Indictment charging him with conspiracy to distribute 50 grams or more of "crack", in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Among the issues raised in this sentencing is the question, novel in this circuit, whether a defendant is entitled to the benefit of the Sentencing Guidelines' "escape clause", U.S.S.G. § 5C1.2, where, as here, the defendant meets that section's requirement of having just one criminal history point only after the grant of a downward departure in criminal history. Put another way, the question is whether a defendant who has more than one criminal history point can claim the benefit of U.S.S.G. § 5C1.2 on the basis of a successful downward departure motion that reduces his criminal history to category I.

#### Facts

On August 30, 1993, Miguel Burgos, the defendant's roommate, met with two undercover agents for the purpose of selling the agents crack cocaine. The following day, Burgos introduced the agents to defendant. According to Burgos, defendant had access to a source of crack cocaine. While at his apartment, defendant paged his source to arrange a deal. Later that day, defendant and Burgos met the two undercover agents in Alexandria, Virginia. Defendant told one of the agents to follow them to Suitland, Maryland. When they arrived in Maryland, defendant again called his source of supply. A short time later, a red Blazer arrived. The undercover agents handed Burgos $3,600. Burgos gave the money to defendant, who then walked to the Blazer and exchanged the money with the Blazer's occupants for approximately 61.2 grams of crack cocaine with a purity of 76%. Defendant then walked back to the agents' car and gave the agents the cocaine. The agents gave

Helen F. Fahey, United States Attorney, James L. Trump, Assistant United States Attorney, John David Kuchta, Special Assistant United States Attorney, Alexandria, VA, for U.S.

Burgos an additional $400 for his role in the deal. Defendant, it appears, did not receive any of the $3,600 in compensation for his role in the offense.

### A. Uncontested Matters:

With the exception of the matters treated in Part B, the parties have no objection to the Presentence Investigation Report ("PSIR"). Accordingly, with the exception of those matters, the Court adopts the findings and conclusions of the PSIR as its findings and conclusions in this sentencing proceeding.

With the consent of the parties, the Court **ORDERS** the following letters and documents be made a part of the PSIR:

1) Letter from Bob Teay and family, undated.

2) Letter from Ronald Glovier, undated.

3) Records of Pinellas County, 1986 DWI arrest.

4) Letter from Mary Beth Crump, dated September 15, 1995.

5) Letter from Joan Crump, dated September 18, 1995.

6) Letter from Robert Crump, undated.

7) Letter from Michael G. Rusinack, undated.

8) Letter from Mark Crump, dated September 14, 1995.

### B. Contested Matters:

1) *Role in the Offense*

■ Defendant objects to the Probation Officer's conclusion, at paragraph 23 of the PSIR, that defendant played more than a minor role in the offense. Indeed, the PSIR addendum concludes that defendant was more culpable than Burgos, who was also charged in the Indictment. Defendant disputes this, contending instead that he was "a great deal less culpable than [Burgos] in the drug operation that [Burgos] ran", and hence that he is entitled to an offense level reduction for playing only a minor role in the offense. *See* U.S.S.G. § 3B1.2. The government disagrees, claiming, correctly, that defendant does not qualify for the § 3B1.2 of-

fense level credit, as the record confirms the accuracy of the PSIR conclusion on defendant's role in the offense.

Sentencing Guidelines § 3B1.2 provides for an offense level decrease where defendant's role in the offense is minimal (4 level decrease), minor (2 level decrease), or somewhere in between (3 level decrease). Here, defendant claims his role was minor. Application Note 3 to § 3B1.2 states that a "minor" participant is any participant who is less culpable than most other participants, but whose role cannot be described as minimal. In further refining the definition of a "minor" participant, courts have made clear that "middlemen", "arrangers", and "go-betweens" in drug deals are not minor participants and are not less culpable than most other participants. *See, e.g., United States v. Tremelling,* 43 F.3d 148 (5th Cir.1995), *cert. denied,* — U.S. ——, 115 S.Ct. 1990, 131 L.Ed.2d 876 (1995) (arranger and go-between in drug deal held not be a minor participant); *United States v. Jones,* 1 F.3d 1167, 1168 (11th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 231 (1994) (defendant held not to be entitled to an adjustment for being a minor participant); *United States v. Santistevan,* 39 F.3d 250, 254 (10th Cir. 1994) (same). These principles, applied to the facts at bar, confirm the correctness of the Probation Officer's decision to deny defendant an offense level credit for role in the offense.

Here, as the record reflects, defendant's role was essential to the success of the crack cocaine deal. He was the person who arranged the deal, the person who set it up. He was the person who found the source of the drugs, paid the source for the drugs and then delivered the drugs. Defendant, therefore, was an arranger, a facilitator, a middleman in a crack cocaine deal. As such, defendant cannot plausibly be said to be less culpable than *most* other participants, nor can his role in the offense reasonably be termed as minor.

■ Because there is little doubt that defendant's role in the August 30 transaction was not minor, defendant invites the Court to expand its focus and consider his role in a larger drug trafficking conspiracy led by Burgos. In support, defendant cites authori-

ty standing for the general proposition that proper role characterization requires a focus not on a single transaction but on the entire charged conduct. In principle, this is a sound argument; the § 3B1.1 commentary makes clear that the role in the offense adjustment should be based on all relevant conduct. And a variety of decisions illustrates this principle.[1] Defendant also argues that this principle is especially applicable where, as here, the government insisted on a plea to the most serious count in the indictment.

Although defendant's argument is sound in principle, it is of no avail to him in this case because the only conduct he was charged with is the August 30 conspiracy with Burgos to sell approximately 61 grams of crack cocaine to the undercover agents. There is no other relevant conduct to consider.[2] And, in that conspiracy, defendant's role was not minor. Accordingly, defendant's objection in this regard must be **OVERRULED.**

### 2) *Motion for a Downward Departure*

██ Next, defendant moves for a downward departure in criminal history category

pursuant to U.S.S.G. § 4A1.3 on the ground that his criminal history category of II significantly over-represents the seriousness of his criminal history and the likelihood that he will commit other crimes.[3] His argument is a persuasive one. One of the criminal history points is attributable to a nine and a half year old DUI conviction, a conviction that just falls within the ten year cut-off of § 4A1.2(e)(2). But for that conviction, defendant would fall within criminal history category I. A review of the record as a whole points persuasively to the conclusion that for defendant the risk of recidivism is slight and a criminal history category of I better reflects that risk and the seriousness of defendant's criminal history. Accordingly, the motion for a downward departure to category I is **GRANTED.**

### 3) *Applicability of § 5C1.2*

██ Defendant's third objection raises the novel question whether defendant can claim the benefit of the § 5C1.2 escape valve on the basis of a downward departure in crimi-

1. See e.g., *United States v. Westerman,* 973 F.2d 1422 (8th Cir.1992) (where group engaged in a scheme to defraud insurance company via mail fraud, arson and other criminal activities, defendant was entitled minor role adjustment because he was recruited solely to assist in arson); *United States v. Webster,* 996 F.2d 209 (9th Cir.1993) (minor participant adjustment may be based on relevant conduct, not just on convicted offense); *United States v. Caballero,* 936 F.2d 1292 (D.C.Cir.1991) (same).

2. Defendant suggests that Burgos operated a larger drug distribution ring in which defendant was a minor player. This larger ring was neither charged nor shown by defendant or the government. Had such a ring been established, defendant might not wholly welcome the result for in that event, he would be chargeable with the entire amount of drugs distributed by the ring that was reasonably foreseeable to him. He was not so charged. *See United States v. Olibrices,* 979 F.2d 1557, 1559–60 (D.C.Cir.1992) (defendant should not receive reduction for mitigating role in the overall conspiracy when offense level was not based on that conspiracy); *United States v. Lampkins,* 47 F.3d 175, 180–81 (7th Cir.1995) (minor role adjustment properly denied where defendant sentenced only for drugs with which he was directly involved); *see also United States v. Neal,* 36 F.3d 1190, 1211 (1st Cir.1994) (affirmed: defendant did not have minor role in

offenses of conviction on which sentence was based); *United States v. Gomez,* 31 F.3d 28, 31 (2d Cir.1994) (affirmed: reduction properly denied for alleged minor role in related conduct not used in sentencing) *United States v. Marino,* 29 F.3d 76, 78 (2d Cir.1994) (same); *United States v. Lucht,* 18 F.3d 541, 555–56 (8th Cir. 1994) (court properly denied reduction for minor role in larger in conspiracy where defendants pled guilty to less serious offense).

3. The PSIR concludes that defendant has three prior convictions that fit within U.S.S.G. § 4A1.1, two DUI convictions in 1986 and one for DWI in 1991. The parties correctly recognize that DUI and DWI convictions must be counted for purposes of calculating criminal history. *See United States v. Deigert,* 916 F.2d 916, 918 (4th Cir.1990); *see also Nichols v. United States,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (DUI conviction counted even if defendant unrepresented at time of conviction). Thus, the PSIR assessed defendant with three criminal history points, placing him in category II. Yet, defendant adduced evidence that called into question whether one of the 1986 convictions should be counted. The government's response concedes that it should not, leaving two convictions to be counted at one point for each. With two criminal history points, defendant, absent a downward departure, still falls within category II.

nal history. Nor is this merely a question of academic interest; a difference of fifty months of incarceration is at stake. Because of the criminal history downward departure, defendant's final offense level is 29 and his criminal history category is I. At this offense level and criminal history, the Guidelines yield a range of 87 to 108 months. That range, however, would be trumped by the statutorily mandated minimum sentence of 120 months. But if, as plaintiff contends, he is entitled to benefit of U.S.S.G. § 5C1.2 by virtue of the downward departure, then he would face a sentence in the much lower range of 70 to 87 months.[4] Put another way, if defendant is not accorded the benefit of § 5C1.2, then he will receive (approximately) a ten year sentence of incarceration rather than one of (approximately) six years solely because he has a nine and a half-year-old DUI conviction.

Analysis properly begins with an examination of the language of § 5C1.2. That provision states that "in the case of an offense under 21 U.S.C. § 841 ... the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets [five criteria]." U.S.S.G. § 5C1.2. It is undisputed that defendant meets four of the five criteria. The only question is whether he meets the requirement that he "not have more than 1 criminal history point, as determined under the sentencing guidelines." U.S.S.G. § 5C1.2(1); 18 U.S.C. § 3553(f)(1).

Defendant argues that the downward departure in criminal history category effectively erases criminal history points so as to make him eligible for the escape valve provision. Were the issue to be resolved on the basis of the language of § 5C1.2 alone, defendant's argument might be persuasive, for § 5C1.2(1) refers to the determination of criminal history points "as determined under the guidelines." A downward departure motion can certainly be seen as falling "under the guidelines," specifically § 4A1.3, and it would follow that a defendant's eligibility for

the escape valve provision should be determined by the number of criminal history points as modified by the downward departure provision contained within the guidelines.

Yet, the language "under the guidelines" is not without some ambiguity. Application Note 1 resolves the ambiguity by stating that " '[m]ore than one criminal history point, as determined under the sentencing guidelines,' as used in subdivision (1), means more than one criminal history point *as determined under § 4A1.1* (Criminal History Category)." App.Note 1, U.S.S.G. § 5C1.2 (emphasis added). So defined, "under the guidelines" does not include downward departures in criminal history category. In other words, a downward departure in criminal history *category* does not affect the determination of a defendant's criminal history *points* for purposes of determining defendant's eligibility for the escape valve provision.

▪■ Given the dispositive role of the Application Note here, it is important to be clear about the authoritative nature of such notes. It is now settled that an Application Note to a sentencing guideline is authoritative and is binding on courts, provided that it is not "plainly erroneous or inconsistent" with the guideline it is interpreting. *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Defendant has not argued that Application Note 1 is somehow inconsistent with other guideline provisions. Nor can the Application Note be said to be plainly erroneous. Indeed, the Note's distinction between adjustments of criminal history category under § 4A1.3 and determination of criminal history points for purposes of § 5C1.2 is reflected in the text of § 4A1.3 itself. There, the guidelines consistently instruct sentencing courts to consider whether defendant's *category* accurately reflects his propensity for recidivism. *See, e.g.,* U.S.S.G. § 4A1.3 ("The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ... and therefore consider a downward departure

---

4. In addition to allowing defendant to be sentenced under the guidelines rather than the statutory mandatory minimum, § 5C1.2 also acts to

decrease his offense level by two points, from 29 to 27. *See* U.S.S.G. § 2D1.1(b)(4).

from the guidelines."); *see also United States v. Jakobetz,* 955 F.2d 786, 806 (2d Cir.) ("[Procedure for departing upward] does not, however, require the sentencing judge to assign specific point values to the conduct evaluated for the purposes of the criminal history departures."), *cert. denied,* 506 U.S. 834, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). Accordingly, departing downward in criminal history category does not affect the number of defendant's criminal history points, and defendant is therefore ineligible for the benefit of § 5C1.2.

### C. *Conclusions:*

1. Defendant's adjusted offense level is 32.

2. Defendant's total offense level is 29.

3. Defendant's criminal history category is I.

4. The range of punishment under the Guidelines is 87 to 108 months with at least 5 years of supervised release. The statutorily mandated minimum sentence, however, is 120 months.

5. The Guidelines range of fines is $15,000 to $150,000. An additional statutory special assessment of $50 applies to each felony count. 18 U.S.C. § 3013(a)(2)(A).

6. Probation is not authorized.

### D. *Sentence Imposed:*

The Court commits defendant to the custody of the Bureau of Prisons for a period of one hundred twenty (120) months. Defendant is to be given credit for time already served in connection with this case.

Upon release from confinement, defendant is to serve a period of five (5) years of supervised release. As a special condition of supervised release, defendant must participate in and successfully complete a program of substance abuse rehabilitation and counseling at the direction and discretion of the probation officer.

The Court imposes a $50 special assessment. 18 U.S.C. § 3013(a)(2)(A).

In light of the defendant's limited assets, the Court declines to impose a punitive fine or an additional fine to cover the costs of incarceration or supervised release.

### E. *Statement of Reasons for the Court's Sentence:*

The sentence imposed is the statutorily mandated minimum sentence for the offense. It is well beyond what is required to satisfy the guidelines' goals relating to deterrence, retribution, and incapacitation. Indeed, this is a textbook case of an inappropriate sentence resulting from the mechanical application of a statutorily mandated minimum sentence. It is difficult to believe that the designers and drafters of § 5C1.2 and the commentary envisioned this case and concluded that a nine and a half year old DUI conviction that is erased by a downward departure in criminal history category should still operate to exclude a defendant from the benefit of § 5C1.2. If it was envisioned, and this result intended, it is wrongheaded as a matter of sensible and just sentencing policy.[5]

The Court finally **ORDERS** that this Sentencing Memorandum be appended to, and made a part of, the PSIR, pursuant to Rule 32(c)(3)(D), Fed.R.Crim.P.

Copies of this Sentencing Memorandum shall be issued to all counsel of record, the Probation Office, and the U.S. Marshal's Office.

---

**5.** Based on this Court's sentencing experience, a sentence for defendant within the Guidelines range would have adequately achieved the appropriate measures of retribution, incapacitation and deterrence.