101 F.3d 682
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Roy VADALA; Joseph Vadala, Defendants,
Mark VADALA, Defendant-Appellant.
 No. 95-1527.
 United States Court of Appeals, Second Circuit.
 April 19, 1996.
 
 1
 APPEARING FOR APPELLANT: David Z. Chesnoff, Goodman, Stein & Chesnoff, Las Vegas, NV.
 
 
 2
 APPEARING FOR APPELLEE: Emily Berger, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY.
 
 
 3
 E.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York it is hereby
 
 
 6
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 7
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 8
 Defendant-appellant Mark Vadala ("Mark") appeals from a judgment of conviction and sentence entered in the United States District Court for the Eastern District of New York (Sifton, J.), convicting him, upon a plea of guilty, of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and of making a false statement to a federal agent, in violation of 18 U.S.C. § 1001. The district court sentenced Mark to a 12-month-and-one-day term of imprisonment, a two-year term of supervised release, and a $100 special assessment.
 
 
 9
 In November of 1991, Mark and his brother, Roy Vadala ("Roy"), purchased a house in Middle Village, Queens, for $275,000. An Internal Revenue Service ("IRS") investigation revealed that Mark and Roy had paid part of the purchase price of the house in cash, and the remainder with 44 bank checks. The IRS investigation also revealed that the 44 bank checks had been purchased with cash at eight different banks, in amounts less than $10,000.
 
 
 10
 In June of 1992, IRS Agent Paul Cunningham questioned Mark about the source of the funds used to purchase the house. Mark, who at the time was a New York City police officer, stated that the funds came from loans from relatives and from a police department pension fund. Upon being questioned on a later date, Mark also informed Agent Cunningham that he had received $30,000 of the funds from his wife's aunt, Barbara Considine, who had received the funds through a home equity loan. When first questioned by Agent Cunningham, Considine stated that she had loaned the money to Mark. When questioned on a subsequent occasion, Considine said that she had not loaned him the money.
 
 
 11
 In May of 1994, a grand jury indicted Mark, Roy, and their father, Joseph Vadala, for conspiracy to evade the reporting requirements of 31 U.S.C. § 5313 by structuring cash transactions with various financial institutions, in violation of 31 U.S.C. § 5324. On September 23, 1994, Mark pleaded guilty to a two-count superseding information that charged him with conspiracy to defraud the United States for the purpose of impeding the functions of the IRS in the collection and recording of currency transactions reports, in violation of § 371, and with making a false statement to an IRS agent, in violation of § 1001.
 
 
 12
 Thereafter, a presentence report ("PSR") was prepared by the Eastern District of New York Probation Department (the "Department"). The Department computed Mark's base offense level to be 14. In reaching this number, the Department found that sentencing for violations of § 371 is governed by U.S.S.G. § 2X1.1(a), which directs that the base offense level for violations of § 371 be derived from the underlying substantive offense. Because the underlying substantive offense in this case was a violation of 31 U.S.C. § 5313 (evasion of the reporting requirements), the Department concluded that sentencing is governed by U.S.S.G. § 2S1.3(a), which sets the base offense level at six. The base offense level of six was then enhanced by eight levels, pursuant to U.S.S.G. § 2F.1, because the structured transactions totalled $219,000. Finally, the Department applied U.S.S.G. § 2S1.3(b)(2), which states that if "the defendant did not act with reckless disregard of the source of the funds; ... the funds were the proceeds of lawful activity; and ... the funds were to be used for a lawful purpose, decrease the offense level to level 6." Accordingly, Mark's offense level was decreased to six.
 
 
 13
 On December 15, 1994, the Department, on its own accord, amended the PSR to correct "an error." The Department decided that § 2S1.3(b)(2) did not apply because agents had been unable to determine whether the sources of Mark's funds were legitimate. Accordingly, Mark's adjusted offense level was set at 16. Three points then were deducted for Mark's acceptance of responsibility, reducing his offense level to 13, yielding a Guidelines imprisonment range of 12 to 18 months.
 
 
 14
 Subsequently, Mark objected to the finding that § 2S1.3(b)(2) did not apply. In order to resolve the issue, the district court held a Fatico hearing to determine whether Mark could show that the funds had come from legitimate sources. Mark, Roy, and their brother, Glenn Vadala ("Glenn"), testified at the hearing. They claimed that the funds that had been used in the illegally structured bank transactions had come from savings they had accumulated over the years. The brothers also indicated a general mistrust of banks, and testified that they kept large sums of cash in their homes.
 
 
 15
 Mark testified that, in addition to money contributed from his savings, he used money that he had obtained from wedding gifts, engagement gifts, and gifts from his son's christening. Mark also admitted that he had lied to IRS Agent Cunningham concerning the source of the funds he contributed. However, Mark continued to maintain that the money he contributed came from legitimate sources.
 
 
 16
 At the conclusion of the hearing, the district court stated that Mark did not meet his burden of showing by a preponderance of the evidence that the funds that had been used in the illegally structured bank transactions came from legitimate sources. Thereafter, in accordance with the Department's amended PSR, the district court sentenced Mark to the lowest sentence allowed in his Guidelines range. This appeal followed.
 
 
 17
 Mark argues that the district court erred in determining that he failed to show by a preponderance of the evidence that the funds used in the illegally structured bank transactions were from legitimate sources. Mark maintains that § 2S1.3(b)(2) applies and that his Sentencing Guidelines level should have been decreased to level six. We disagree.
 
 
 18
 When a defendant seeks a downward adjustment from his Sentencing Guidelines range, he must prove the mitigating circumstances by a preponderance of the evidence. See United States v. Gomez, 31 F.3d 28, 30-31 (2d Cir.1994). We review the district court's factual determinations under the clearly erroneous standard. United States v. Leonard, 37 F.3d 32, 37-38 (2d Cir.1994). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Macklin, 927 F.2d 1272, 1282 (2d Cir.) (citation omitted), cert. denied, 502 U.S. 847 (1991).
 
 
 19
 Although the Vadala brothers presented accounts of how they obtained the money that they had contributed toward the purchase of the house, evidence also was presented that called into question the veracity of the brothers' stories. For example, they testified that they kept large sums of cash in cigar boxes, shoe boxes, and duffel bags in their rooms. These amounts of money seemed disproportionate to their moderate incomes over the years in question. In addition, although they all claimed to distrust banks, Mark and Glenn had numerous bank accounts in different financial institutions.
 
 
 20
 Furthermore, Mark admitted to lying about the source of the funds during questioning by Agent Cunningham. The fact that Mark testified that he had requested others, including Barbara Considine, to lie on his behalf casts doubt on Mark's account of where the funds came from. Based on the foregoing, we conclude that the district court's finding was not clearly erroneous.