104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Lamont HOLDER; Jihad Bey Allah; Corey Davis; Renwick
Joseph Andrew, Defendants,
and
Leon Thomas Holland, a/k/a Abdul Malik Shabazz, Defendant-Appellant.
 No. 96-1004.
 United States Court of Appeals, Second Circuit.
 Sept. 13, 1996.
 
 Paul P. Rinaldo, Forest Hills, NY.
 Emily Berger and James Walden, Assistant United States Attorneys, Eastern District of New York, Brooklyn, NY.
 Present: FEINBERG, CARDAMONE, McLAUGHLIN, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was submitted.
 
 
 2
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 3
 An eight-month undercover operation by the Bureau of Alcohol, Tobacco & Firearms ("ATF") uncovered a large gun-running operation in Queens, New York. Leon Thomas Holland was a key player in this operation. His roles included the following: facilitating the purchase of over 120 weapons by undercover agents, introducing the agents to numerous gun dealers, attending meetings at which dealers and the undercover agents negotiated purchases, transferring money from agents to the dealers, soliciting the agents for the dealers, and taking possession of weapons for the agents. Often Holland would act as an intermediary in weapons transactions between ATF agents and others.
 
 
 4
 Holland also participated in the sale of explosives to the agents. These explosives were four inch cylinders, approximately 1.7 inches in diameter, packed with a volatile chemical compound, and topped with a fuse. According to ATF explosive experts, these devices were "designed to function by explosion," and "would cause property damage and would be capable of causing serious injury or death to persons in proximity of the explosion."
 
 
 5
 Holland pled guilty to one count of possession of a shotgun and possession of machine gun, in violation of 26 U.S.C. §§ 5861(h), 5871, before the United States District Court for the Eastern District of New York. (Sifton, C.J.). At sentencing, the district court: (1) rejected Holland's request for a two-level downward adjustment under U.S.S.G. § 3B1.2(b) for his minor role in the offense; and (2) increased Holland's base offense level two levels under U.S.S.G. § 2K2.1(b)(3) for possession of a destructive device. Holland appeals arguing that: (1) he was only the middleman in the weapons transactions and is thus entitled to a minor role adjustment; and (2) the devices he helped sell the agents were not "destructive device[s]" under § 2K2.1(b)(3).
 
 
 6
 1. A defendant is entitled to a minor role adjustment when he is "less culpable than most other participants" or "play[ed] a part in committing the offense that [made] him substantially less culpable than the average participant." U.S.S.G § 3B1.2(b), comment. n. 3. Whether or not a defendant is entitled to a minor role adjustment depends on "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Garcia, 920 F.2d 153, 155 (2d Cir.1990) (per curiam). We review a district court's factual findings as to a defendant's role in an offense for clear error. United States v. Gomez, 31 F.3d 28, 31 (2d Cir.1994). The defendant bears the burden of proving by a preponderance of evidence that he was entitled to a minor role adjustment. United States v. Castano, 999 F.2d 615, 617 (2d Cir.1993).
 
 
 7
 Holland did not meet his burden. He was fully aware of the nature and scope of the weapons deals. His participation was crucial to the consummation of the transactions, and his solicitation of the agents for additional gun purchases ensured the continuing vitality of the illicit relationship. The fact he acted as a broker or middleman does not automatically entitle him to a minor role adjustment, see, e.g., United States v. Colon, 884 F.2d 1550, 1552 (2d Cir.) (defendant who facilitated drug transactions with knowledge of scope of enterprise not entitled to minor role adjustment), cert. denied sub nom., Papathanasion v. United States, 493 U.S. 998 (1989), nor does the fact that others were more culpable than he. See United States v. Pena, 33 F.3d 2, 3 (2d Cir.1994) (defendant's role in offense determined in part by measuring each participant's acts and relative culpability against the elements of the offense of conviction). As the district court concluded, "the time and complexity and activity that he devoted to his trade" leads to the conclusion that he was not entitled to a minor role adjustment. This determination was not clear error.
 
 
 8
 2. Holland argues that the destructive devices for which he received a two-level enhancement under U.S.S.G. § 2K2.1(b)(3) were essentially "home made firecrackers," which do not qualify as "destructive device[s]," as that term is used in § 2K2.1(b)(3).
 
 
 9
 Under the Sentencing Guidelines, the term "destructive device" means "any explosive, incendiary, or poison gas--(i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) [similar device]." U.S.S.G. § 2K2.1(b)(3) n. 4.
 
 
 10
 The ATF explosives experts stated that the devices were intended to operate by explosion and would cause property damage and bodily injury and death to those in proximity of any explosion. Holland did not present any evidence to dispute this conclusion. The district court correctly concluded that these contraptions were explosive devices, which, under the definition set forth above qualify as "destructive devices." The fact that they were "home made" does not affect this analysis. See, e.g., United States v. Ragusa, 664 F.2d 696, 699-700 (8th Cir.1981) (home made gasoline devices considered "destructive device"), cert. denied, 457 U.S. 1133 (1982).
 
 
 11
 We have considered all of the arguments raised by Holland, and find them to be without merit.
 
 
 12
 Accordingly, the decision of the district court is AFFIRMED.