**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN L. THOMPSON,

      Defendant-Appellant.

No. 97-3172
(District of Kansas)
(D.C. No. 95-CR-20086-3)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY,** and **MURPHY**, Circuit Judges.

Defendant John L. Thompson appeals the district court's denial of his motion seeking to compel the Government to file a motion for downward departure based on his cooperation. Thompson also appeals his sentence.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court affirms.[1]

## I. BACKGROUND

On January 4, 1996, Thompson was indicted for conspiring to distribute more than five kilograms of cocaine and 500 grams of cocaine base, in violation of 21 U.S.C. § 846. On June 26, 1996, an Information was filed charging Thompson with using a telephone to facilitate a drug transaction, in violation of 21 U.S.C. § 843(b). On June 28, 1996, pursuant to a plea agreement, Thompson entered a guilty plea to the Information. In exchange for his guilty plea, the Government agreed to dismiss the charge pending against him in the earlier Indictment. The plea agreement also provided that "[i]f, in the sole opinion of the United States Attorney's office, the defendant's cooperation amounts to substantial cooperation, the government will file a motion, pursuant to Section 5K1.1 Sentencing Guidelines . . . to depart from the guideline level range."

Before his sentencing, Thompson learned the Government did not plan to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1. Thompson therefore filed a motion to compel the Government to file a § 5K1.1 motion.

---

[1]After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Thompson was sentenced on May 28, 1997. At the sentencing hearing, the district court denied Thompson's motion to compel the Government to file a § 5K1.1 motion. The court also denied Thompson's request for a reduced base offense level for a mitigated role in the offense and rejected Thompson's argument that the quantity of cocaine attributable to him for sentencing purposes was inaccurate. The district court then sentenced Thompson to the statutory maximum term of 48 months of imprisonment, plus supervised release and a special assessment.

On appeal, Thompson argues the district court erred in (1) denying his motion to compel the Government to file the motion for downward departure; (2) calculating the drug quantity attributable to him for sentencing purposes; and (3) refusing to reduce his base offense level based on his role in the offense.

## II. DISCUSSION

### A. Motion to Enforce Plea Agreement

Thompson first argues the Government's decision not to file a motion for downward departure was made in bad faith and in violation of the plea agreement. In support of his argument, Thompson asserts he rendered substantial cooperation based on his three-hour, pre-plea debriefing and his willingness to testify against

codefendant James Walton at various post-plea proceedings initiated by Walton.[2] Thompson also contends that based on his pre-plea debriefing, when the Government agreed to file a motion for downward departure if he rendered substantial cooperation, it was informed of the extent of his knowledge of criminal activities and thus the extent of his ability to provide substantial cooperation.

Section 5K1.1 of the Sentencing Guidelines permits a sentencing court to depart downward from the guideline range "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." Under § 5K1.1, the Government is not required to file a motion for downward departure, but instead is granted discretion to do so. *See Wade v. United States*, 504 U.S. 181, 185 (1992). The Government may bargain away this discretion in a plea agreement. *See United States v. Lee*, 989 F.2d 377, 380 (10th Cir. 1993). Here, however, the plea agreement expressly left the decision to file a § 5K1.1 motion in the sole discretion of the Government. "When a Defendant asserts that the government breached an agreement that leaves discretion to the prosecutor, the

---

[2]In his motion to compel the Government to file a downward departure motion, Thompson asserted the Government had requested that he testify at the various post-plea proceedings initiated by codefendant Walton, but later determined his testimony was unnecessary.

district court's role is limited to deciding whether the government made the determination [not to file the motion] in good faith." *Id.* at 380. Whether the Government acted in good faith is a factual determination which we review for clear error. *See id.*

In response to Thompson's motion to compel the Government to file a § 5K1.1 motion, the Government asserted Thompson had not provided substantial assistance warranting a § 5K1.1 departure. With respect to Thompson's cooperation in the pre-plea debriefing, the Government asserted Thompson had received the benefit of this cooperation because he was able to enter into a plea agreement dismissing a second charge and providing that the Government would inform the sentencing court of his cooperation and would recommend he receive a sentence at the lowest end of the Sentencing Guideline range. The Government therefore maintained that a § 5K1.1 motion would require additional assistance. The Government further indicated that as of the time of sentencing, Thompson had provided no additional information or assistance which would warrant a departure under § 5K1.1. During Thompson's sentencing, the district court agreed with the Government's arguments and denied Thompson's motion. The court further stated that even if the Government had made the motion, the court would have denied the departure.

Thompson has not shown the district court erred in finding the Government acted in good faith in deciding not to file a § 5K1.1 motion. Although Thompson asserts that based on his pre-plea debriefing the Government was aware of the extent of his knowledge before entering into the plea agreement, Thompson has not shown that based on the debriefing the Government determined he could provide no further assistance. To the contrary, the Government's original intention to have him testify at various proceedings involving a codefendant indicates the Government believed in good faith that he was able to provide further assistance.

Thompson's assertion that he has provided substantial cooperation is also inadequate to entitle him to his requested relief. *See Wade*, 504 U.S. at 186 ("[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing."). The plea agreement expressly provides that the determination of whether he provided substantial cooperation was to be made solely by the Government. Thompson does not contend the Government promised him his cooperation in the pre-plea debriefing was itself sufficient to constitute substantial assistance for purposes of a § 5K1.1 motion. The plea agreement does not contain or reflect such a promise, and Thompson has not alleged the Government made a promise not contained in the plea agreement.

Likewise, Thompson's asserted willingness to testify on the Government's behalf in various proceedings involving a codefendant does not itself constitute substantial assistance such as would require the Government to file a § 5K1.1 motion. *Cf. United States v. Vargas*, 925 F.2d 1260, 1266 (10th Cir. 1991). A defendant does not have the right to dictate the strategy decisions of the prosecution; instead, such decisions are properly within the sole discretion of the Government, limited only by the requirement that the Government make such decisions in good faith. Thompson has not alleged the Government declined to have him testify in such proceedings for improper motives, thus preventing him in bad faith from providing substantial assistance. *Cf. United States v. Courtois*, 131 F.3d 937, 939 (10th Cir. 1997).

Moreover, in the absence of language in the plea agreement promising Walton that he would be given the opportunity to provide assistance, the fact that another opportunity did not arise for him to provide further assistance does not render the government's decision not to file a § 5K1.1 motion a bad faith decision. *Cf. id.* (holding that in absence of specific language providing otherwise, government did not obligate itself under plea agreement to give defendant opportunity to render substantial assistance). We thus reject

Thompson's assertion the district court erred in denying his motion to compel the Government to file a § 5K1.1 motion.[3]

## B. Calculation of Drug Quantity

Thompson next argues the district court erred in calculating the amount of drugs attributable to him for purposes of determining his base offense level. *See* U.S.S.G. § 2D1.1(a)(3) (setting base offense level according to drug quantity attributable to defendant).

According to the presentence report, Thompson acted as a courier in a drug conspiracy led by codefendant James Walton. The coconspirators purchased large amounts of cocaine in Los Angeles and then transported and sold the cocaine in

---

[3]Thompson also asserts that because the district court did not determine the meaning of the term "substantial cooperation" as used in the plea agreement, the court "was in no position to determine whether the Government used its discretion regarding whether defendant had rendered substantial cooperation, in good faith." This court rejects Thompson's argument. Although the plea agreement refers to "substantial cooperation" rather than "substantial assistance in the investigation or prosecution of another," the language employed in U.S.S.G. § 5K1.1, the plea agreement provision at issue also explicitly refers to filing a motion under § 5K1.1. It would therefore be reasonable to assume the term "substantial cooperation" was intended to be synonymous with the term "substantial assistance" as used in § 5K1.1. There is no indication in the record that Thompson understood "substantial cooperation" to have a meaning distinct from the "substantial assistance" language of § 5K1.1. Even assuming there is a material difference between "substantial cooperation" and "substantial assistance," Thompson has not adequately explained how ascribing a different meaning to "cooperation" substantively alters the analysis to be employed by the district court in determining whether the Government acted in good faith in deciding not to file a § 5K1.1 motion.

the Kansas City area. The drug proceeds were then transported back to California for further cocaine purchases. In April 1994, Thompson was stopped in Louisiana carrying approximately $33,000 in suspected drug proceeds. Thompson was arrested and the money was seized. Following his release, Thompson made telephone calls to Walton's pager to advise Walton of the seizure. Thompson made the calls from both Louisiana and Kansas. Pursuant to his plea, Thompson admitted the $33,000 was drug proceeds and admitted he was attempting to carry the proceeds from New Orleans to Los Angeles.[4]

In calculating the drug equivalent of the $33,000 seized from Thompson, the district court relied on testimony that members of the drug conspiracy for which Thompson had acted as a courier purchased cocaine in California for $15,000 to $16,000 per kilogram. The cocaine was then sold in Kansas for $21,000 to $22,000 per kilogram. Based on the evidence that Thompson was transporting the $33,000 in drug proceeds to Los Angeles for Walton, the court used the $22,000 per kilogram figure to determine that the drug equivalent of the $33,000 was approximately 1.5 kilograms of cocaine.

---

[4]The presentence report also indicated that in January 1994, Thompson rented a motel room in Los Angeles for Michael Sullivan, another courier in the drug conspiracy, to be used while awaiting a shipment of cocaine which Sullivan was to deliver to Kansas City.

Thompson argues the evidence did not establish that the $33,000 seized from him in New Orleans was related to cocaine sales made by Walton in Kansas City and he asserts the district court therefore erred in converting the $33,000 to 1.5 kilograms of cocaine. We review the district court's drug quantity calculation for clear error. *See United States v. Cruz Camacho*, 137 F.3d 1220, 1225 (10th Cir. 1998).

At the sentencing hearing, Thompson argued the drug quantity should be lower because cocaine could typically be purchased on the street in Kansas for $100 per gram (or $100,000 per kilogram). In support of this argument, Thompson introduced the affidavit of a Lawrence, Kansas police officer. The district court rejected Thompson's argument because Thompson failed to show cocaine was sold in this case by members of the conspiracy for $100 per gram. As the district court recognized, the only evidence in the record indicated the coconspirators sold cocaine for approximately $22,000 per kilogram. Moreover, the evidence showed the organization in which Thompson was involved was in the business of buying and selling kilogram quantities of cocaine, rather than gram quantities. Therefore, as the court stated, the larger quantities in which the coconspirators were dealing "accounts for a lower per gram price than what would occur in a retail sale on the street to a user of cocaine."

The court further rejected Thompson's argument that the $33,000 was not connected to the California-Kansas drug conspiracy. Instead, the court found the evidence linked Thompson and the specific transaction in question to the larger conspiracy led by Walton. Thompson admitted the $33,000 was drug proceeds and admitted he was attempting to carry the proceeds to Los Angeles. Further, Thompson admitted that after the money was seized he called Walton both from Louisiana and from Kansas to inform him of the seizure. Based on the evidence in the record, the district court did not clearly err in relying on the $22,000 per kilogram figure in calculating the drug quantity.

### C. Reduction for Mitigating Role

Thompson next argues the district court erred by not reducing his sentence for a mitigating role. Thompson asserted before the district court that he should receive a four-level reduction to his base offense level pursuant to U.S.S.G. § 3B1.2(a).

U.S.S.G. § 3B1.2 vests the district court with discretion to grant a base offense level reduction if it finds a defendant played a mitigating role in a given offense.[5] The court may reduce the defendant's offense level by four levels if it

---

[5]Pursuant to U.S.S.G. § 2D1.6, the base offense level for the use of a telephone in committing a drug offense is determined by the offense level applicable to the underlying offense. In this case, the underlying offense was possession with intent to distribute cocaine.

finds the defendant was a "minimal" participant in the criminal activity, by two levels if the defendant was a "minor" participant in the activity, or by three levels if the defendant's actions fell between a minimal and minor role. U.S.S.G. § 3B1.2. Application note 4 to § 3B1.2 provides that when a defendant "has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense."

We review the district court's factual findings regarding a defendant's role in the offense for clear error and give due deference to the court's application of the Sentencing Guidelines to the facts. *See United States v. Smith*, 131 F.3d 1392, 1399 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1109 (1998). The burden is on the defendant to establish by a preponderance of the evidence that he is entitled to an offense level reduction under the Sentencing Guidelines. *See United States v. McCann*, 940 F.2d 1352, 1359 (10th Cir. 1991).

Thompson argues that his role in the relevant offense, possession with intent to distribute cocaine, was merely to act as a courier between the buyer and seller of the cocaine. He asserts he was therefore less culpable than both the buyer and seller and is accordingly eligible for a mitigating role reduction.

-12-

The determination of whether a defendant is entitled to a reduction under § 3B1.2 is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 background. Thompson's assertion that he acted as a courier does not automatically mean he was a minor or minimal participant entitled to a § 3B1.2 reduction. This court has rejected the argument that a defendant's courier status alone compels an offense level reduction under § 3B1.2. *See, e.g., United States v. Ballard*, 16 F.3d 1110, 1115 (10th Cir. 1994). Likewise, Thompson's contention that because he was a courier he was necessarily less culpable than other participants does not necessarily mean he played a minimal or minor role in the offense. *See United States v. Caruth*, 930 F.2d 811, 815 (10th Cir. 1991); *United States v. Walker*, 1 F.3d 423, 427-28 (6th Cir. 1993).

Reviewing the record, this court concludes the district court's findings that Thompson was not a minimal or minor participant are supported by the evidence and the district court's decision not to grant a reduction is consistent with the Guidelines. In rejecting Thompson's request for a reduction under § 3B1.2, the court first recognized Thompson had already received the benefit of pleading guilty to the less serious offense of possession rather than a drug conspiracy offense and therefore was not entitled to a further reduction because his conduct in the larger criminal enterprise was less serious than other participants. *See* U.S.S.G. § 3B1.2 application note 4; *cf. United States v. Isaza-Zapata*, No. 97-

5443, 1998 WL 294021, at *6 (3d Cir. June 8, 1998); *United States v. Pena*, 33 F.3d 2, 3 (2d Cir. 1994). The court also noted Thompson was only held accountable for the drug amount involved in the specific offense to which he pled guilty (i.e., the drug equivalent of the $33,000 found on Thompson when he was arrested), rather than the entire quantity of drugs involved in the overall conspiracy.[6] Therefore, a reduction based on a mitigating role in the larger conspiracy was not appropriate. *See United States v. Burnett*, 66 F.3d 137, 140-41 (7th Cir. 1995) (noting that when a courier is held accountable only for drug amounts personally carried, a reduction is not necessarily warranted even if courier played minor role in relation to larger drug enterprise); *see also Isaza-Zapata*, 1998 WL 294021, at *6; *United States v. Belitz*, 141 F.3d 815, 818-19 (8th Cir. 1998); *United States v. Fernandez*, 92 F.3d 1121, 1122-23 (11th Cir. 1996); *United States v. Gomez*, 31 F.3d 28, 31 (2d Cir. 1994); *United States v. Olibrices*, 979 F.2d 1557, 1560 (D.C. Cir. 1992).

The district court also found that in attempting to transport drug proceeds to Walton in Los Angeles, Thompson was not a minimal participant with respect to the specific offense of possession with intent to distribute. The court further determined that even if it were to consider Thompson's role in the overall

---

[6]The district court specifically noted that Thompson had not been credited with the cocaine seized from Sullivan, for whom Thompson allegedly rented a motel room in California for use while waiting for a cocaine shipment.

criminal conspiracy, Thompson was not a minimal participant in the larger enterprise. The court found Thompson was not "somebody who, on a one-time basis, makes an incredibly bad decision to participate as a courier." *Cf.* U.S.S.G. § 3B1.2 application note 2 (noting reduction for minimal participant may be appropriate when defendant "played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment" or when defendant "was recruited as a courier for a single smuggling transaction involving a small amount of drugs"). Instead, the court found the evidence established that Thompson had multiple ties to codefendant James Walton and his drug trafficking organization and was "a garden-variety participant in Mr. Walton's conspiracy." *Cf. id.* § 3B1.2 application note 1 (stating defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant"); *Isaza-Zapata*, 1998 WL 294021, at *3 (noting relevant factors in determining whether courier is a minor participant include defendant's relationship to other participants and defendant's awareness of the nature and scope of the criminal enterprise). These findings are supported by the record and are not clearly erroneous. We therefore conclude the district court did not err in refusing to grant a reduction based on Thompson's role in the offense.

## III. CONCLUSION

-15-

The district court did not clearly err in finding the Government acted in good faith in deciding not to file a motion for downward departure under U.S.S.G. § 5K1.1. The district court further did not clearly err in computing the drug quantity attributable to Thompson or in determining Thompson did not play a minor or minimal role in the offense. Accordingly, this court **AFFIRMS**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge