UNITED STATES of America,
Plaintiff–Appellee,

v.

David CARUTH, Defendant–Appellant.

No. 90–2079.

United States Court of Appeals,
Tenth Circuit.

April 16, 1991.

Larry Gomez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Mary Y.C. Han, Albuquerque, N.M., for defendant-appellant.

Before McKAY, ANDERSON, Circuit Judges, and BROWN,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

David Caruth entered a plea of guilty and was convicted of possession with intent to distribute more than 50 kilograms of marijuana and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The district court imposed a sentence of 27 months' imprisonment pursuant to the Sentencing Guidelines based upon an adjusted offense level of 18 and a criminal history category of I which established a Guideline range of 27 to 33 months. The offense level of 18 was computed from a base offense level of 22, reduced by two points for acceptance of responsibility (U.S.S.G. § 3E1.1(a)), and reduced another two points for minor participant status (U.S.S.G. § 3B1.2(b)). Caruth now appeals that sentence contending that the district court clearly erred in not permitting a downward adjustment of four points for "minimal participant" status under U.S.S.G. § 3B1.2(a). We affirm.

We recently discussed the Guidelines' "minimal participant" adjustment and our standard of review of district court determinations with respect to minimal participant status in *United States v. Calderon–Porras*, 911 F.2d 421, 422 (10th Cir.1990), as follows:

The term "minimal participant" is not defined by the Sentencing Guidelines. The commentary, however, provides that the four-level decrease "applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of the group." § 3B.1.2., Application Note 1. In determining whether or not the defendant's role in the offense merits being classified as a minimal participant, the commentary instructs us to focus upon "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id.* The com-

mentary clearly indicates that "the downward adjustment for a minimal participant will be used infrequently." *Id.* Note 2.

When we review a determination by the district court that a defendant is or is not a minimal participant, we are reviewing whether or not the district court correctly applied the Sentencing Guidelines to the factual findings. A finding that a defendant is or is not a minimal participant is itself a finding of fact, not a legal conclusion. [Citations omitted.] We must accept the findings of fact of the district court unless they are clearly erroneous. 18 U.S.C. § 3742(d)(2). We give due deference to the district court's application of the Sentencing Guidelines to the facts. 18 U.S.C. § 3742(e); *United States v. Smith*, 888 F.2d 720, 723 (10th Cir.1989), *cert. denied*, [——] U.S. [——], 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990).

■ The defendant has the burden of showing that he is entitled to a downward adjustment by a preponderance of the evidence. *United States v. Maldonado–Campos*, 920 F.2d 714, 717 (10th Cir.1990); *United States v. Alvarez*, 914 F.2d 213, 215 (10th Cir.1990). "The ultimate determination of whether or not a defendant is entitled to be classified as a minimal participant is heavily dependent upon the facts of each case, and each case must be judged separately." *United States v. Calderon–Porras*, 911 F.2d at 423. *See United States v. Arredondo–Santos*, 911 F.2d 424, 426 (10th Cir.1990).

No evidence was presented at the sentencing hearing in this case. All the facts relating to the nature and scope of the drug operation from which Mr. Caruth's arrest stems, and Caruth's participation in that operation, are contained in the presentence report. The presentence report discloses that on December 1, 1988, the New Jersey State Police stopped a vehicle occupied by Caruth and his brother-in-law,

* Honorable Wesley E. Brown, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

David Engler, in Salem County, New Jersey. Caruth was driving. Upon inspection of the vehicle the police discovered and seized approximately 171 pounds, net weight, of marijuana. A portion of the marijuana was packaged in cans containing a baby food label which read "First Meal Rice." The state police arrested and searched both Caruth and Engler. Caruth was found to be in possession of nine grams of marijuana and .6 grams of methamphetamine, which he indicated was for his own personal use.

Based on information developed from the arrests of Caruth and Engler, law enforcement officers uncovered an extensive marijuana growing and selling operation involving at least three large farm facilities, two in New Mexico and one in Colorado. The facilities included growing barns and buildings which housed a complex indoor marijuana cultivation project, including an elaborate irrigation system, programmed fertilization, on-premises plant manicurists, and so on. The operation also included packaging facilities using tin cans labeled as baby food. The enterprise represented an investment of hundreds of thousands of dollars.

Twenty-nine individuals in addition to Mr. Caruth were charged for activities ranging from management and finance to cultivating and selling the marijuana crop.

▮ According to the presentence report, Caruth's participation in this extensive enterprise was limited to the one interstate transportation of marijuana for which he was arrested. There is no direct evidence that Caruth was paid for this trip or that he had any knowledge of the enterprise beyond the trip in question. There is no evidence that Caruth owned the vehicle used during this trip or that he had any possessory interest in or authority over the vehicle. Rather, the presentence report suggests that Caruth's role as an occupant of the vehicle was to assist his brother-in-law, David Engler. The presentence report states that "[Caruth] acknowledges assisting another co-defendant, David Engler, in transporting marijuana to the State of New Jersey." R. Vol. II at 12. Caruth's version of the trip, as recounted in the presentence report, is that Engler requested him to accompany Engler on a trip to New Jersey. Caruth claims he agreed, with the intention of visiting his sick grandmother. He stated that while he did not actually know marijuana was on the truck, he did suspect that it was there. He further stated that once he knew the marijuana was in the truck he should have left his brother-in-law rather than accompanying him all the way to New Jersey. He accepted responsibility for "riding in a vehicle containing marijuana." *Id.* at 13.

At the sentencing hearing, Caruth's counsel made the following representation, to which the government agreed:

MS. HAN: The pre-sentence office indicated that Mr. Caruth was entitled to a 2 level reduction for acceptance of responsibility and another 2 level reduction for a role in the offense adjustment. I would submit to the Court Mr. Caruth is entitled to a 4 level departure as a minimal participant.

I would direct the Court's attention to my sentencing memorandum and further point out to the Court that upon discussion with agents Hess and Slagel of the drug enforcement agency they are agreed that Mr. David Caruth's involvement in this entire operation was the one incident in December of 1988 when he rode with his brother-in-law David Engler from New Mexico to New Jersey where he got arrested with a load of marijuana.

That is the entire participation of David Caruth in this case. It is my understanding that Mr. Tierney on behalf of the United States government does not object to my making that representation.

MR. TIERNEY: I do not, your Honor, with the following proviso. That, of course, is all we know.

THE COURT: Sure.

R. Vol. III at 6.

With that information before it, the court ruled as follows:

THE COURT: All right. I'm going to adjust the total offense level to 18. I

will find that he was a minor participant. I cannot find, and will not find that he was a minimal participant, and I see no reason in this case to depart downward from the guideline range.

The Court finds there is no further need for an evidentiary hearing as there are no other disputed facts. I will find that the offense level in this case is 18— excuse me. Mr. Weger, in the original pre-sentence report there was no deduction for acceptance of responsibility?

MS. HAN: There was no reduction for offense level.

MR. WEGER: There was a reduction for acceptance of responsibility, what we clarified in our—

THE COURT: Yes, there was and this is found in work sheet d under item 2, acceptance of responsibility. Yes. That was in the original report. Okay.

So I'm going to now find that the total offense level is proper. He will be given 2 points for being a minor participant, not a minimal participant but a minor participant and this establishes the offense level for this case at 18 and the criminal history category is one. The guideline range which results from this is 27 to 33 months.

Further, the Court in arriving at a sentence within the appropriate guideline range takes judicial notice that David Caruth has been convicted for his first felony offense. Defendant was transporting, was involved in the transportation of 171 pounds of marijuana to the state of New Jersey where he was arrested. In imposing a sentence the Court has considered the above, these factors and the sentencing goals of punishment, general deterrents, incapacitation and protection for the community.

Therefore, pursuant to the Sentencing Reform Act of 1984, it's the judgment of the court that as to the information, the defendant, David Caruth, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 27 months. Upon release from confinement the defendant shall be placed on super-

vised release for a term of—is 5 years appropriate?

R. Vol. III at 9–10.

Caruth argues that he falls within the minimal participant category because he is "plainly among the least culpable of those involved in the conduct of [the] group," quoting § 3B1.2, Application Note 1. Appellant's Brief in Chief at 6. That is so, he contends, because of his lack of knowledge or understanding of the scope and structure of the enterprise and his relatively lesser involvement in the enterprise. Here, the presentence report suggests that all the other individuals identified with this large enterprise had knowledge of the general scope of the enterprise (*e.g.*, manicuring thousands of plants or packaging the harvested and processed leaves and seeds in an ongoing, large canning operation), that they were involved for a considerable period of time, and that they received compensation for their services. None of these characteristics are established as to Caruth.

Mr. Caruth also argues that, in addition to being relatively less culpable, he fits squarely within the definition of a minimal participant under the Guidelines. He states that his involvement was limited to being "a passenger with a drug courier, on a one-time drug delivery," Appellant's Brief in Chief at 11, thereby falling within the example given in the Application Notes under § 3B1.2 describing those who "played no other role in a very large drug smuggling operation than to offload part of a single marijuana shipment." § 3B1.2, Application Note 2. He emphasizes that his purpose for going on the trip was to visit his sick grandmother, not to transport drugs, and that his only offense lay in failing to exit the vehicle and sever his connection with the trip when he learned that his suspicions about drugs as a cargo were well-founded.

If it had accepted all of Caruth's characterizations, the district court may have been hard pressed to find that he was not a minimal participant within the meaning of the Guidelines. However, the district judge is "not bound to accept the defen-

dant's own declarations about his level of participation in the crime." *United States v. Badger*, 925 F.2d 101, 105 (5th Cir.1991). The clear implication from the record before us is that the district court did not accept Caruth's version of the trip. Accordingly, we are left with the bare fact that Caruth and Engler transported a commercial shipment of drugs across the United States for delivery and sale on the east coast. Caruth was driving the vehicle at the time he was arrested and his plea of guilty establishes his culpability with respect to the crime charged, i.e., he was not an innocent bystander. In addition, the logistics of obtaining possession of the marijuana and methamphetamine Caruth carried for his personal use may imply that Caruth had more knowledge of the drug organization than he claims.

These facts do not place Caruth in the category of someone who simply offloads a shipment of drugs. Transcontinental transportation of a commercial drug shipment constitutes more serious involvement than merely offloading the shipment at its destination. Caruth was a courier. We have observed that "[w]hile the commentary indicates that some couriers may appropriately receive classification as minimal participants, it does not mandate this result for all couriers." *United States v. Calderon–Porras*, 911 F.2d at 423. In fact, even minor participant classification is routinely denied. *See United States v. Donaldson*, 915 F.2d 612, 615 (10th Cir.1990) ("drug couriers, allegedly under the direction of others, are not necessarily minor participants"); *United States v. Arredondo–Santos*, 911 F.2d at 425–26 ("mere driver" who attempted to transport marijuana from Mexico to United States not a minor participant); *United States v. Pelayo–Munoz*, 905 F.2d 1429, 1431 (10th Cir.1990) (transportation of large amount of drugs into country not minor participation).

As for Caruth's argument with respect to his relative culpability, we have recognized the difficulty of assigning degrees of culpability to different drug activities. "A drug smuggling operation has many participants; some may purchase, some may transport, some may distribute, and some

may sell. All are indispensable to the operation. It would be unproductive to debate which function is the more culpable." *United States v. Calderon–Porras*, 911 F.2d at 423.

Furthermore, being comparatively less culpable than the other defendants and obtaining minimal participant status are not necessarily synonymous. We agree with the reasoning of the Ninth Circuit in *United States v. Andrus*, 925 F.2d 335, 337 (9th Cir.1991),

> that the guidelines did not intend for every defendant who was less culpable than his codefendants to be granted minor participant status. This more sensible approach obviates the need for judges to examine meticulously every pair of defendants to determine which might be a scintilla more or less culpable than the other.

This reasoning applies with equal force to minimal participant status. "[T]he guidelines do not require adjustment just because multiple participants are involved." *Id.* Instead, the Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime. *Id.* at 338. In other words, resort may be had to both internal and external measurements for culpability. *See United States v. Sanchez*, 914 F.2d 206, 208 (10th Cir.1990) (district court not required to find that defendant was or was not the least culpable participant in determining that defendant's role was not minor). The fact that the Guidelines themselves take into account the magnitude of conduct by establishing different offense levels does not preclude the use of an external measure in applying a particular adjustment. A major goal of the Guidelines, after all, is uniformity.

■ We cannot state categorically that transporting a commercial shipment of drugs across the United States, an essential distribution link in a drug enterprise, constitutes minimal participation compared to average participants in drug offenses, even though the individual is uncompensated and has no knowledge of the scope of

the enterprise beyond the fact that he is accomplishing a transcontinental shipment of drugs of significant commercial dimension. *See United States v. Arredondo–Santos*, 911 F.2d at 426 ("Couriers are indispensable to any drug-dealing network."). Nor can we say that the district court erred in refusing to find that Caruth was plainly the least culpable in this enterprise. The case boils down to our standard of review which is duly deferential to the district court in sentencing matters. "[T]he terms 'minimal participant' and 'minor participant' are not too distant points along a continuum of moderate criminal participation." *United States v. Maldonado–Campos*, 920 F.2d at 718. If the district court had determined that Caruth was entitled to minimal participant status, we would not have been able to reverse that finding as clearly erroneous. Likewise, we cannot say that the district court was clearly erroneous in its finding that Caruth was a minor, but not a minimal, participant. Reviewing the record, it is apparent that Caruth did not establish by a preponderance of the evidence that he was a minimal participant.

Finally, Caruth argues that the district court failed to make sufficient findings of fact about his status. However, we have only required district courts to make findings and explain their reasoning with respect to departures under the Guidelines. "When *adjustments* under the guidelines are involved, a trial court is in no way required to make detailed findings, or explain why a particular adjustment is or is not appropriate." *United States v. Maldonado–Campos*, 920 F.2d at 718. *See United States v. Donaldson*, 915 F.2d at 615; *United States v. Beaulieu*, 900 F.2d 1531, 1535–36 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990). It is nevertheless true that a statement of reasons "would more clearly inform the defendant and help on appellate review." *United States v. Donaldson*, 915 F.2d at 615. The sparseness of the record in this case underscores that point.

We are concerned by the court's reference to the quantity of drugs, 171 pounds, being transported. The quantity of drugs has already been taken into account in establishing the offense level and taking the quantity into account once again in deciding upon the applicability of adjustments for minimal or minor participation risks imposing double punishment. However, we are not persuaded that the district court was proceeding under an erroneous legal interpretation of the Guidelines when it refused to make a further two point downward adjustment in Caruth's favor.

In sum, we decide this case based upon our deferential standard of review which springs from the proposition that sentences are imposed by district, not appellate, courts. For the foregoing reasons, the sentence imposed by the district court is AFFIRMED.