**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

PEGGYARNELL McNEIL,

      Defendant - Appellant.

No. 98-2136

(D. New Mexico)

(D.C. No. 97-CR-587-BB)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Peggyarnell McNeil pleaded guilty to one count of possession with intent to distribute Phencyclidine (PCP) in violation of 21 U.S.C. § 841(a). She now appeals the sentence imposed, contending that the district court erred by: (1) refusing to adjust her offense level downward pursuant to United States Sentencing Guidelines § 3B1.2(a), based on her minimal role; and (2) refusing to depart downward pursuant to United States Sentencing Guidelines § 4A1.3, on the basis that her criminal history category overrepresented the seriousness of her past criminal conduct. We affirm.

**BACKGROUND**

On August 15, 1997, McNeil, who had never acted as a drug courier before, agreed to transport nine kilograms of marijuana from California to New York by train, for which she was to be paid between $2500 and $3000. However, the next day, she was asked to transport PCP instead of marijuana. Unaware that PCP was volatile and dangerous, and also unaware that, for purposes of imposing federal drug penalties, one gram of the PCP mixture that she would be carrying was the equivalent of one kilogram of marijuana, she agreed to the change.

On August 18, 1997, shortly before she boarded the train, she was given a hard-sided suitcase which contained three one-gallon Coleman fuel canisters with PCP. However, she did not know exactly how much PCP she was transporting,

nor where it came from.  Furthermore, she knew nothing about the structure of the organization that was manufacturing and distributing the drug, and she had no description or name for the person who was to meet her in New York (whom she would be able to identify only by his prearranged greeting.)  The next day, on August 19, 1997, while the train was stopped in Albuquerque, New Mexico, DEA agents noticed a strong fabric softener smell coming from the suitcase.  Pursuant to a consensual search, the agents discovered the canisters of PCP.

Upon her arrest, McNeil immediately admitted her role in the crime.  She was released on personal recognizance and placed under Pretrial Services supervision.  However, after her first four urine tests returned positive for cocaine, she was placed in a halfway house.  Since that time, she has participated in intensive counseling, obtained employment, and remained drug-free.

On November 13, 1997, McNeil entered into a plea agreement, which, inter alia,  stipulated a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).  The amended Presentence Investigation Report (PSR) gave such an adjustment, and also provided for a two-level reduction for playing only a minor role in the crime pursuant to U.S.S.G. § 3B1.2(b).  The initial offense level was based upon a calculation which assumed that each of the three gallon canisters was full, and which then converted the liquid measurement into 11.355 kilograms of PCP, or the equivalent of 11,355

kilograms of marijuana. Finally, the PSR calculated seven criminal history points, all from minor theft convictions, with two additional points added pursuant to U.S.S.G. § 4A1.1(d) (offense committed while defendant on probation), resulting in a total of nine criminal history points and placing McNeil in criminal history category IV.

McNeil objected to the drug quantity calculation. Additionally, she argued that she was entitled to a four-level reduction as a minimal participant, and also to a downward departure because the criminal history category overrepresented the seriousness of her previous criminal activity. At the hearing, the court was persuaded by McNeil's argument on quantity, and it found the amount of PCP which she transported to be less than ten kilograms (or the equivalent of less than 10,000 kilograms of marijuana), which reduced the base offense level by two points. However, the court overruled McNeil's other objections, and it adopted the remaining PSR recommendations. Finally, pursuant to a separate Government motion, the court made a downward departure which resulted in a final base offense level of 23, and a guideline range of 70 to 80 months. The court then sentenced McNeil to 70 months' imprisonment.

In this appeal, McNeil reasserts the objections which the district court rejected, contending that she should have received an adjustment for minimal

role, and that she also should have received a downward departure because her criminal history overrepresented the seriousness of her past criminal activity.

## DISCUSSION

A defendant bears the burden of demonstrating entitlement to a downward adjustment, United States v. Martinez, 983 F.2d 968, 977 (10th Cir. 1992), and a district court's determination regarding a defendant's entitlement to an adjustment is a question of fact which we review for clear error, see United States v. Gault, 141 F.3d 1399, 1404 (10th Cir.), cert. denied, 119 S. Ct. 253 (1998).  We give due deference to the district court's application of the guidelines to the facts and to its ability to judge the credibility of the witnesses upon whose testimony it relies. United States v. Hankins, 127 F.3d 932, 934 (10th Cir. 1997).  However, we review de novo the district court's legal interpretation of the sentencing guidelines.  United States v. Davis, 151 F.3d 1304, 1308 (10th Cir. 1998).

Guideline § 3B1.2 permits the district court to decrease the base offense level if the defendant's role in the offense makes her "substantially less culpable than the average participant."  U.S. Sentencing Guidelines Manual § 3B1.2, comment. (backg'd) (1997).  According to the guidelines, the four-level decrease for minimal participation under § 3B1.2(a) "will be used infrequently" and should

be reserved for "defendants who are plainly among the least culpable of those involved in the conduct of a group." Id., comment. (nn.1-2). Relevant factors include the defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." Id., comment. (n.1). Examples include individuals recruited as couriers for a single transaction involving a small quantity of drugs. Id., comment. (n.2). By contrast, the two-level decrease for minor participation applies to individuals who are "less culpable than most other participants, but whose role could not be described as minimal." Id. comment. (n. 3).

On appeal McNeil contends that the court's refusal to find that she was a minimal participant was based on its erroneous understanding of the guidelines, and she argues that the court failed to give sufficient weight to her lack of knowledge both as to the organization and to the nature and amount of the drug she was carrying.

While McNeil correctly notes the commentary's suggestion that some couriers may be classified as minimal participants, that classification, which is to be used "infrequently," is clearly fact-specific. Id., comment. (nn.1-2); see United States v. Caruth, 930 F.2d 811, 814-15 (10th Cir. 1991). Moreover, an adjustment is not mandated merely because there were multiple participants. Caruth, 930 F.2d at 815. Unlike the example in the commentary, in this case,

McNeil was transporting a substantial quantity of PCP, and she knew the specific drug involved.[1] Under the circumstances, and under our deferential standard of review, we conclude that the district court did not err in finding that McNeil was not entitled to further adjustment as a minimal participant.

As her second claim of error, McNeil contends that the court erred when it refused to depart downward under U.S.S.G. § 4A1.3 based on the over-representation of the seriousness of her criminal history. She further argues that the court's refusal was based upon a legal error or misapplication of the guidelines, *i.e.*, the failure to maintain the distinction between offense level adjustments and criminal history departures.

It is well settled that we lack jurisdiction to review a district court's refusal to depart from the sentencing guidelines, unless the court "erroneously interpreted the Guidelines as depriving it of the power to depart based on the proffered circumstances." United States v. Castillo, 140 F.3d 874, 887 (10th Cir. 1998) (quoting United States v. Barrera-Barron, 996 F.2d 244, 245 (10th Cir.1993)). As we explained in Castillo, we apply a bright-line rule to determine whether appellate jurisdiction exists. That is, we have no jurisdiction, unless the district

---

[1]McNeil repeatedly complains that she believed that she was carrying only the equivalent of nine kilograms of marijuana. In fact, under the court's quantity ruling, McNeil was held responsible for carrying just under 10 kilograms of PCP. The fact that she was unaware of the equivalency ratios is irrelevant to her role in the offense of possession with intent to distribute less than 10 kilograms of PCP.

court states that it has no authority to depart for the entire class of circumstances proffered by the defendant.  Id.

Although McNeil attempts to cast the district court's decision as a legal error or misapplication,[2] the record reveals that the court carefully considered her motion and circumstances, and concluded simply that the circumstances did not warrant departure:

> I have considered the three grounds for downward departure raised by the defendant.   While I do think this particular agreement to carry PCP may have been aberrant, I don't think it's totally out of line with other activities of a criminal nature that defendant has been involved with, nor with her long-term drug use. . . .  At several levels, . . . I think that many of her prior crimes are less than serious.  However, I am troubled by her failure to appear, and, frankly, dirty urine test since she was arrested.  So I don't think the criminal category of four is an overrepresentation . . . .

R. Vol. III, at 64-65.

In this case, the record clearly indicates that the court's consideration and resulting refusal to depart downward was based upon the proper exercise of its

---

[2]McNeil complains that the court committed reviewable legal error based on its statement that "I don't think, given the fact that we applied the Rule of Lenity to the prior calculation of the amount of PCP[, that it] would be appropriate to consider this as an overrepresentation of top of that.  That would be a misapplication of the spirit of the guidelines."  R. Vol. III, at 65. Essentially, McNeil contends that such a statement indicates that the district court improperly interchanged factors relevant to offense level with those related to criminal history.  However, in context, the complained-of statement was largely parenthetical, and came only after the court had analyzed and rejected McNeil's proffered circumstances.

discretionary power as set out in <u>Castillo</u>. <u>Castillo</u>, 140 F.3d at 888 (noting that we have power to review only "[w]here, because of a purely legal conclusion, a district court refuses even to consider whether a defendant's circumstances may support departure"). Therefore, we lack jurisdiction to review the court's refusal to depart.

AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge