**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DESHAUN LAMONT LAWS,

    Defendant-Appellant.

No. 99-6318
(D.C. No. 99-CR-56-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument is not necessary. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted on the briefs.

On April 7, 1999, defendant Deshaun Lamont Laws pleaded guilty to one count of knowingly defrauding a financial institution in violation of 18 U.S.C. § 1344. He received a sentence of thirty-seven months' imprisonment and three

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

years' supervised release. He was also ordered to pay restitution in the amount of $15,964.96. In this appeal, he challenges the district court's loss calculation under USSG § 2F1.1(b)(1)(G) and its failure to afford him a downward departure under § 3B1.2. We affirm.

Between February 3 and 5, 1998, Mr. Laws and three additional accomplices passed a total of sixty-two counterfeit checks at NationsBank branch locations throughout the Oklahoma City area. Each member of the group was given an alias, as well as a fictitious employee identification card, from Mr. Kenyatta Lyles, the leader of the operation. The checks, all written on a legitimate commercial business account, were identical.

Operating in pairs, the participants moved to each location representing themselves as employees cashing payroll checks. With the exception of Mr. Laws, they also opened personal accounts using the aliases which Mr. Lyles provided. False deposits totaling approximately $28,000.00 were submitted to those accounts. Personally, Mr. Laws cashed sixteen checks totaling $15,964.96. In combination, the other three participants cashed checks totaling $62,292.59.

First we will turn to the district court's loss calculation. Mr. Laws maintains the loss figure for his criminal activity should be based only on the amount of money he withdrew personally. In essence, his challenge is two-fold. First, he argues he should not be held accountable for the criminal conduct of the

other participants. In addition, he maintains it was error to use an intended loss figure which incorporated the fictitious deposits. In this regard, we review the district court's application of the guideline de novo, but review its underlying factual findings for clear error. *See United States Schluneger*, 184 F.3d 1154, 1159 (10th Cir. 1999), *cert. denied*, 120 S.Ct. 800 (2000).

We agree with the trial court that Mr. Laws can be held accountable for the culpable conduct of the other participants. *See* USSG § 1B1.3(a)(1)(B) (noting a defendant may be held responsible for "all reasonably foreseeable acts" taken in furtherance of joint criminal activity). The members of this group stayed at the same hotel and executed this scheme together at the various branch locations. They cashed the counterfeit checks in tandem and, quite clearly, were well aware of what each member was doing. The loss calculation is, therefore, properly defined as the loss occasioned by the entire enterprise.

Moreover, in defining that loss, the district court may use either the actual or intended figure, whichever is the greater amount. *See* USSG § 2F1.1(b)(1), comment (n.7); *see also United States v. Smith*, 951 F.2d 1164, 1166 (10th Cir. 1991) (noting that "where actual loss is less than the loss the defendant intended to inflict, intended or probable loss may be considered"). Here, the court combined the false deposits with the cash withdrawals to come to an intended loss

figure of $106,296.59. That finding directed an increase of six to the base offense level under § 2F1.1(b)(1).

The district court found that opening the fictional personal accounts furthered the conspiracy and was part of the participants' plan to avoid detection for as long as possible. The court noted that the success of this plan hinged, in large part, on the participants' ability to move in and out of the area quickly without detection. Withdrawing cash from a legitimate business account, and opening seemingly legitimate personal accounts at the same time, furthered that goal. Consequently, using an intended loss figure which incorporated the fictitious deposits was not in error. We hold the loss calculation was proper.[1]

Mr. Laws also maintains the district court erred in denying him a downward departure under USSG § 3B1.2. Under that section, the court may decrease the offense level based on the extent of the defendant's participation in the criminal enterprise. The section allows a four level decrease for minimal participation and a two level decrease for minor participation. Mr. Laws urges that if he is held responsible for the intended losses of the entire group, then he should likewise be entitled to a decrease under this section because he was not as culpable as the other participants.

---

[1] Moreover, we note, as did the district court, that even if only the total withdrawals of the four individuals are used to calculate loss, the increase to the base offense level is the same. *See* USSG § 2F1.1(b)(1)(G).

Our review of this issue requires analysis of whether the trial court properly applied the Sentencing Guidelines to the factual findings. *See United States v. Caruth*, 930 F.2d 811, 812 (10th Cir. 1990). "'A finding that a defendant is or is not a minimal participant is itself a finding of fact, not a legal conclusion.'" *Id.* at 812 (10th Cir. 1991) (quoting *United States v. Calderon-Porras*, 911 F.2d 421, 422 (10th Cir. 1990)) (additional citations omitted). As a consequence, we will accept the district court's findings unless they are clearly erroneous. *Caruth*, 930 F.2d at 812.

Essentially, Mr. Laws maintains that because he did not know or appreciate the true national scope of Mr. Lyles' counterfeiting scheme, he is eligible for a reduction. The district court rejected this argument, noting that he cashed sixteen checks in two days as part of what he clearly knew was a wider plan to defraud NationsBank in Oklahoma City. The court noted Mr. Laws' participation was consistent with the other individuals executing Mr. Lyles' scheme.

Upon reviewing the record, we agree. "[B]eing comparatively less culpable than the other [co-conspirators] and obtaining minimal participant status are not necessarily synonymous." *Id.* at 815. While there is no question Mr. Lyles was the leader of this operation, Mr. Laws' participation was equal to the other members of the group. The record provides that he participated fully in the plan and was not less culpable than the other individuals.

Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge