FILED
United States Court of Appeals
Tenth Circuit

December 28, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

OMAR FRANCISCO
ORDUNO-RAMIREZ,

     Defendant - Appellant.

No. 17-3010
(D.C. No. 2:14-CR-20096-JAR-7)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

Defendant Omar Francisco Orduno-Ramirez pleaded guilty without a plea

agreement to one count of conspiracy to distribute more than 50 grams of

methamphetamine. He appeals his sentence, arguing the district court erred in

denying his request for a mitigating-role sentence reduction. Because the district

court properly applied the Sentencing Guidelines, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I.  Background.

Defendant was a participant in a drug-trafficking operation that transported and distributed methamphetamine from Arizona to Kansas City, Kansas.  Defendant asserted at sentencing that he was a minor participant in the illegal drug operation and requested a two-level downward adjustment to his sentence.  *See* U.S. Sentencing Guidelines Manual (USSG) § 3B1.2(b) (U.S. Sentencing Comm'n 2016).  The district court denied this request, ruling he was not a minor participant.  On appeal, Defendant argues the district court erroneously compared his role to typical minor role participants, and not co-participants in the actual offense, as required by the commentary to § 3B1.2.  The following information regarding Defendant's role in the criminal activity is taken from Defendant's change of plea hearing and testimony from an FBI agent at Defendant's sentencing hearing.

Vicencio Olea-Monarez was the head organizer responsible for distributing the methamphetamine in Kansas City and elsewhere.  Olea-Monarez obtained the methamphetamine from Gabriel Agustin Lopez, who lived in Phoenix, Arizona.  Lopez obtained his methamphetamine from his boss, Javier, who also lived in Phoenix, as well as a Mexican supplier.  Olea-Monarez hired Defendant and Hector Valdez to transport the drugs and the cash drug-sale proceeds between Phoenix and Kansas City.  Defendant was the primary courier for a time.  Olea-Monarez also hired some people to outfit the vehicles used to transport the drugs and cash, to unload the drugs, and to sell the drugs.

2

Defendant was stopped for a traffic violation in July 2014, during which the police found drug proceeds stashed in a secret compartment of the car. Defendant then selected and recommended to Olea-Monarez a new driver, named Ruben, to take over as the operation's drug and cash courier. Defendant provided Ruben with the necessary information to transport the drugs and cash to and from Kansas City.

Defendant, Olea-Monarez, and Lopez also participated in two marijuana growing and distributing operations in Kansas and Arkansas. Olea-Monarez agreed to give Lopez half of his marijuana sale proceeds. Defendant drove illegal aliens, who had been smuggled into Arizona from Mexico, to work as slave laborers at the marijuana fields. Defendant drove the illegal aliens from Arizona to Kansas and brought them food and water at the grow site. He also transported the marijuana seeds from Mexico, obtained fertilizer for the marijuana grow operation from his wife's flower shop in Phoenix, and provided supplies to the Kansas and Arkansas marijuana grow operations. The FBI agent testified at the sentencing that it appeared that Defendant had knowledge of the methods and trade craft used to cross illegal aliens from Mexico into the United States.

Defendant frequently spoke with Olea-Monarez. They discussed topics related to smuggling the illegal aliens; obtaining the marijuana fertilizer; concerns that courier Valdez was being surveilled by police; the arrangements for Defendant to drop off a vehicle at Javier's Phoenix residence; and hiring Ruben as the new drug courier. Evidence also showed that Defendant had some interaction with Lopez and Lopez's boss, Javier, all of whom lived in Phoenix. Defendant interviewed with

3

Lopez, explaining he had been a courier for Olea-Monarez on four prior occasions. Defendant took a car to Lopez to show him how it could be outfitted to transport the drugs and cash. Lopez asked Defendant to rent a car and determine if it could be outfitted as a courier car. On one occasion, Lopez gave Defendant $500 because he was out of money. Defendant drove a vehicle containing cash drug-proceeds from his Phoenix home and left it at Javier's Phoenix residence. Javier gave Defendant the marijuana seeds to transport to Kansas and gave him the money to buy the fertilizer. Lopez and Javier met Defendant once at his Phoenix residence. Defendant took Ruben to Lopez to be interviewed by Javier as the new courier.

Sentencing. Defendant was sentenced in January 2017. The Presentence Report (PSR) calculated Defendant's total offense level as 36. Defendant had no criminal history, and the PSR recommended a sentencing range of 188 to 235 months' imprisonment. Defendant sought a two-level reduction under USSG § 3B1.2(b), arguing he was only a minor participant in the drug operation. He argued he was merely a minimally-paid courier, with no involvement in the actual distribution of drugs other than getting it from Phoenix to Kansas City. The government opposed this reduction, pointing to the evidence that Defendant repeatedly transported both drugs and drug proceeds for the organization, recruited a new courier after he was arrested, and was instrumental in the marijuana operation by providing seeds, fertilizer, and illegal aliens as workers. The government also referred to the evidence that Defendant worked with the heads of the drug operation, noting he had extensive communications with Olea-Monarez and had at least some

4

interaction and face-to-face meetings with Lopez and Javier. The district court denied Defendant's request for a minor-role adjustment under § 3B1.2(b), and sentenced him to 144 months' imprisonment.

II. Discussion.

Sentencing Guideline Section 3B1.2(b) provides a two-level reduction to a defendant's offense level if he was a minor participant. A "minor participant" is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." USSG § 3B1.2, cmt. n.5. The defendant bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *United States v. Salas*, 756 F.3d 1196, 1207 (10th Cir. 2014). Whether to grant a reduction in the offense level based on a defendant's participation in the offense "involves a determination that is heavily dependent upon the facts of the particular case." USSG § 3B1.2 cmt. n.3(C). In reviewing a district court's application of the Sentencing Guidelines, we review legal questions, including the interpretation of a particular guideline, de novo and review any factual determinations for clear error. *United States v. Craig*, 808 F.3d 1249, 1255 (10th Cir. 2015). Defendant offers no argument or reason why any of the district court's findings are clearly erroneous.

Prior to 2015, the Guidelines did not specify, and the circuit courts took different approaches, as to whether a defendant's role in the criminal activity was to be compared with that of the other participants in the specific criminal activity or with a typical offender committing the same type of offense. *See United States v.*

5

*Caruth*, 930 F.2d 811, 815 (10th Cir. 1991) (holding that both comparisons were relevant). In 2015, the Sentencing Commission issued Amendment 794 to resolve the circuit split. It amended the commentary to § 3B1.2 to take the position that, in deciding whether a defendant played a minimal or minor role, "the defendant is to be compared with the other participants in the criminal activity." *See* USSG, app. C sup., amend. 794 (Nov. 1, 2015). Amendment 794 also added to § 3B1.2's commentary the following non-exhaustive list of factors that the district court "should consider" among the "totality of the circumstances":

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*; USSG § 3B1.2, cmt. 3(C).

On appeal, Defendant argues the district court did not follow Amendment 794, but erroneously compared him to typical minor role participants, not co-participants in the actual offense. We disagree. The record clearly demonstrates that the district court correctly applied Amendment 794.

The district court recognized its responsibility to assess Defendant's role in the operation relevant to the other participants in this drug operation. It described

6

Defendant's role in the operations at length, describing in particular where his role was in the overall hierarchy, the nature and scope of his involvement, whether he was someone who organized, supervised, led or managed aspects of the operations, and whether his role was greater or less than the average participant. It made detailed findings as to the role of all the various categories of participants in the criminal activity. It found that Olea-Monarez headed up the operation in terms of selling the methamphetamine, and that his suppliers, Lopez and Javier, were his bosses. The district court also found there were categories of persons less involved in the operation, namely, those to whom Olea-Monarez distributed the drugs and who, in turn, sold the drugs to customers, but who had no other involvement in the operation, as well as those who were hired by for Olea-Monarez to work on the vehicles and who arranged some drug sales.

The district court concluded Defendant's role was less than that of Olea-Monarez, Lopez, or Javier, but had substantially more involvement in the operation than those hired by Olea-Monarez and the illegal workers, particularly because he had direct contact with those above Olea-Monarez, namely Lopez and Javier. The district court found that Defendant was integral to the transportation aspects of the drug operation, driving drugs and delivering drug proceeds to and from Kansas City; was not walled off from contact with the top members of the organization, but had significant direct contact with Olea-Monarez, and discussed operational details with him; was involved in the transportation and care of the smuggled illegal aliens; was responsible for selecting Ruben as the new courier; and

7

supported the marijuana operation by delivering workers, seed, and supplies, playing a key role in providing the fertilizer from his wife's flower shop. Based on these findings, the district court ruled Defendant was not entitled to a sentence reduction as a minor participant.

The district court made only one brief reference to typical couriers in drug conspiracies, stating that in many drug conspiracies, drug couriers are totally walled off from contact with the top members of the organization, and never meet or talk with the top organizers and typically do not even know their names, but are simply paid a small amount of money to drive back and forth. The district court did contrast this typical conduct with that of Defendant, who had had significant direct contact with Olea-Monarez and met with Lopez and Javier. But this brief reference to typical couriers does not indicate that the district court relied in any significant way on a comparison with typical couriers. To the contrary, the primary focus of the district court's entire discussion and analysis was a detailed comparison of Defendant's role with that of the other participants in this criminal activity. The district court discussed the relative culpability of the other participants in this criminal activity in relation to the Defendant's role.

Further, the district court discussed the relevant factors listed in Amendment 794. In particular, it noted the evidence that Defendant understood the scope and structure of the criminal activity, participated to varying degrees with Olea-Monarez and Lopez in planning the criminal activities, and influenced the exercise of decision-making authority by selecting the new courier. Defendant argues he was a

8

mere courier, but that role does not necessarily entitle him to a minor role adjustment. *See United States v. Martinez*, 512 F.3d 1268, 1276 (10th Cir. 2008) ("[W]e have consistently refused to adopt a per se rule allowing a downward adjustment based solely on a defendant's status as a drug courier." (internal quotation marks omitted)). But the district court found that Defendant's role was more than that of a mere courier. He contributed to the drug operations by recruiting a new courier, and he aided and managed that courier, participated in the marijuana operations by providing seeds, fertilizer, and illegal alien workers, and enjoyed the trust of, and interacted with, the top drug organizers. The court's factual findings as to Defendant's role and participation in the criminal activity are not clearly erroneous, and it did not err in its application of § 3B1.2 when it determined Defendant was not entitled to the minor participant sentence reduction.

Affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge

9